```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DEMITRIUS HILL,

                Plaintiff,
                                        AMENDED
    -against-                           MEMORANDUM AND ORDER
                                        08-CV-1045 (JS)(AKT)
U.S. ATTORNEY'S OFFICE, E.D.N.Y.,
RICHARD P. DONOGHUE, A.U.S.A.,
SARAH M. COYNE, A.U.S.A., NASSAU
COUNTY CORRECTIONAL CENTER,
JOHN DOE(S), Phone and
Communications Interceptor,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      Demitrius Hill, Pro Se
                    68133-053
                    U.S.P. McCreary
                    P.O. Box 3000
                    Pine Knot, Kentucky 42635

For Defendant:      Lorna B. Goodman, Esq.
                    Nassau County Attorney's Office
                    One West Street
                    Mineola, New York 11501
```

SEYBERT, District Judge:

Plaintiff Demitrius Hill ("Plaintiff"), proceeding pro se, commenced this action on March 7, 2008, alleging violations of his constitutional rights pursuant to Title III of the Ominbus Crime Control and Safe Streets Act of 1968, as amended (the "Wiretap Act" or "Title III"), 18 U.S.C. §§ 2510-2522, Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the Fourth and the Fourteenth Amendments of the United States Constitution, and the New York State Constitution and statutory provisions. Pending before the Court is Defendant Nassau

County Correctional Center's ("NCCC" or "Defendant") motion to dismiss the Complaint.  For the reasons stated below, Defendant's motion is GRANTED.

BACKGROUND

The relevant facts set forth in this Order are taken from the Complaint and are presumed true for the purpose of deciding the motion to dismiss.  See King v. American Airlines, 284 F.3d 352, 356 (2d Cir. 2002).

Plaintiff claims that he was deprived of his constitutional rights while incarcerated at NCCC.  Plaintiff alleges that in 2006, Assistant United States Attorney Richard Donoghue ("A.U.S.A. Donoghue"), with the consent of the United States Attorney's Office, contacted NCCC and arranged to have Plaintiff's phone calls recorded.  (Compl. ¶ A.)

Plaintiff maintains that A.U.S.A. Donoghue had a device placed in the phone at the NCCC to record Plaintiff's conversations with Magdalena Sanchez ("Sanchez"), a prison psychologist, and that this was done without Plaintiff's knowledge or consent and without a warrant "or other legal justification."  (Id. ¶ C.)  Plaintiff claims that A.U.S.A. Donoghue used Plaintiff's taped telephone conversations to allege a sexual affair between Plaintiff and Sanchez, and to influence Judge Denis Hurley's sentencing determination in Plaintiff's case.  (Id. ¶ D.)  Plaintiff alleges that A.U.S.A. Donoghue committed libel in alleging a sexual affair

with Sanchez, and that A.U.S.A. Donoghue committed a federal tort by taping Plaintiff's calls without a warrant. (Id. ¶ E.)

In his second claim, Plaintiff avers that A.U.S.A. Donoghue provided the phone recordings to A.U.S.A. Sarah Coyne, and used the tapes to secure a grand jury indictment against Sanchez. (Id. ¶ 7.) Plaintiff states that someone from the U.S. Attorney's Office or "the BOP or Department of Justice" or some "federal employee with the U.S. Attorney's acquiescence" provided false information to the media concerning the alleged affair between Plaintiff and Sanchez, as well as Plaintiff's alleged cooperation with the government. (Id. ¶ G.)

On October 23, 2008, Defendant NCCC moved to dismiss on two grounds.[1] First, Defendant argues that Plaintiff's action is barred because Plaintiff did not exhaust his administrative remedies; second, Defendant contends that NCCC is an administrative arm of Nassau County and, therefore, cannot be sued. (Id. 6.)

DISCUSSION

I. Rule 12(b)(6) Standard of Review

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must put forth enough factual allegations to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544,555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929

---

[1] Defendants U.S. Attorney's Office, E.D.N.Y., A.U.S.A. Donogue, A.U.S.A. Sarah Coyne, and John(s) Does, Phone and Communications Interceptor do not move to dismiss.

3

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, __ L. Ed. 2d. __ (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citations and quotations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint fails to state a claim. Id. The plaintiff's factual allegations, in short, must show that the plaintiff's claim is "plausible," not merely "conceivable." Id. at 1951.

When considering a motion to dismiss, a court can first identify pleadings that are not entitled to the assumption of truth because they are mere conclusions unsupported by factual allegations. See Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). After locating the well-pleaded factual allegations, the court should assume their truthfulness and "then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

4

The Court recognizes that pro se plaintiffs are entitled to a more liberal pleading standard. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197; 167 L. Ed. 2d 1081 (2007) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)) (internal quotation marks omitted); Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). Nonetheless, pro se plaintiffs must still comport with the procedural and substantive rules of law. See Javino v. Town of Brookhaven, No. 06-CV-1245, 2008 WL 656672, at *3 (E.D.N.Y. Mar. 4, 2008).

## II. Claims Against NCCC

Plaintiff names NCCC as a Defendant in his Complaint.[2] Defendant contends that claims against NCCC should be dismissed with prejudice since NCCC is merely an administrative arm of Nassau County and cannot be sued. (Def.'s Mot. to Dismiss 9.) Indeed, NCCC is an administrative arm of the municipal entity, the County of Nassau, and thus "lacks the capacity to be sued as a separate entity." Toomer, 2009 WL 1269946, at *1 n.1; see also Davis v. Lynbrook Polic Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against Lynbrook Police Department because

---

[2] Plaintiff claims that he is not suing NCCC "as an entity" and that his action lies against unknown NCCC employees named as "Johns Doe(s)" in his Complaint. (Pl. Decl. in Opp'n to Mot. for Dismiss. 3.) Plaintiff intends to "seek the John Does' names via discovery and name them" at a later date. (Id.)

5

"[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued"). The Court thereby GRANTS Defendant's motion and DISMISSES with prejudice Plaintiff's claims against NCCC.[3] The Court construes all claims against the NCCC as against Nassau County.

III. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff's Complaint should be dismissed because Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. Section 1997e ("PLRA"). (See Def.'s Mot. to Dismiss 1.) The PLRA, which applies to "all prisoners seeking redress for prison circumstances or occurrences," requires that available administrative remedies be exhausted before a prisoner can bring an action under federal law. Porter v. Nussle, 534 U.S. 516, 520, 122 S. Ct. 983, 986, 152 L. Ed. 2d 12 (2002); see also 42 U.S.C. § 1997e(a); Lawrence v. Goord, 304 F.3d 198, 200 (2d Cir. 2002). "The Supreme Court has held that 'the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . .'" Macias v. Zenk, 495 F.3d 37, 40 (2d Cir. 2007) (quoting Porter, 534 U.S. at

---

[3] The Court dismisses only those claims against NCCC, and not those against NCCC employees named as John Does in the Complaint, because NCCC did not move dismiss on behalf of the John Does.

532). It is well-settled that this exhaustion requirement is mandatory and not within the discretion of the Court. Woodford v. Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); Porter, 534 U.S. at 520; Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004).

"[F]ailure to exhaust is an affirmative defense under the PLRA" that the defendant must plead and prove. Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007). Thus, a prisoner plaintiff may seek to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies. Hemphill v. State of N.Y., 380 F.3d 680, 686 (2d Cir. 2004).

In Hemphill, the Second Circuit set out a three-part inquiry to determine whether a prisoner's failure to exhaust administrative remedies should be excused. Id. "Depending on the inmate's explanation for the alleged failure to exhaust," a court should first consider whether administrative remedies were "available" to the plaintiff. Id.; see Abney, 380 F.3d at 668 ("A court may not dismiss for failure to exhaust administrative remedies unless it determines that such remedies are available.") (alterations and citations omitted). The test for assessing the availability of administrative remedies is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." Hemphill, 380 F.3d at 688 (citations and

7

internal quotation marks omitted). Accordingly, courts have held that administrative remedies may not be available when prison officials engage in affirmative misconduct, such as threats or intimidation, to deter or impede a prisoner from filing a grievance. Id.; see, e.g., Gayle v. Benware, No. 08-CV-8017, 2009 WL 2223910, at *5 (S.D.N.Y. July 27, 2009); Hepworth v. Suffolk County, No. 02-CV-6473, 2006 WL 2844408, at *5 (E.D.N.Y. Sept. 29, 2006); see also Kellogg v. N.Y. State Dept. of Corr. Servs., No. 07-CV-2804, 2009 WL 2058560, at *3 (S.D.N.Y. July 15, 2009) (finding allegations that prison procedures were designed to prevent inmates from filing grievances raised a genuine issue as to whether administrative remedies were available to plaintiff).

Under the second inquiry of the Hemphill test, courts should consider whether the defendant has "forfeited the affirmative defense of non-exhaustion . . . ." Hemphill, 380 F.3d at 686. A defendant may forfeit the non-exhaustion defense "by failing to raise or preserve it," id. (citing Johnson v. Testman, 380 F.3d 691, 695 (2d Cir. 2004)), or if the defendant's own actions "inhibit[ed] the inmate's exhaustion of remedies." Id. (citing Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (holding that exhaustion defense may be estopped where defendants allegedly beat and threatened petitioner, and denied grievance forms and writing implements)).

Finally, if the Court finds that administrative remedies

8

were available to the plaintiff, and that the defendant has not forfeited the non-exhaustion defense, the court should determine whether there are "special circumstances" that justify the prisoner's failure to comply with administrative procedures. Hemphill, 380 F.3d at 686 (citing Giano v. Goord, 380 F.3d 670, 676 (2d Cir. 2004)). Special circumstances include those where a plaintiff's "reasonable interpretation" of regulations regarding the grievance process leads him or her to believe that "the dispute is not grievable" or that his or her attempts to exhaust administrative remedies satisfied these regulations. Toomer v. County of Nassau, No. 07-CV-1495, 2009 WL 1269946, at *8 (E.D.N.Y. May 5, 2009); see also Giano, 380 F.3d at 676-77; Hemphill, 380 F.3d at 689-91.

In his Declaration in Opposition to the Defendant's Motion for Dismissal, Plaintiff argues that Nassau County "waived the exhaustion requirement" because grievance procedures at NCCC "were de facto unavailable" to him. (Pl. Decl. in Opp'n to Mot. for Dismiss. 1.) Plaintiff alleges that he was unable to file a grievance because U.S. Marshals moved Plaintiff out of NCCC and into federal custody just ten days after his sentencing. (Id. 2.) Plaintiff also states that grievance procedures are only accessible at the NCCC law library "which prisoners are allowed to go every so often." (Id.) Finally, Plaintiff claims he was unable to pursue his administrative claim while incarcerated at U.S.P. Leesburg

9

because no county grievance forms were available at that facility. (Id. 3.)[4]

To support his argument, Plaintiff cites decisions from the Second Circuit and other Circuits where defendants were estopped from raising the exhaustion defense because defendants' actions prevented inmates from exhausting administrative remedies. (Id.) In its Reply Memorandum of Law, Defendant contends that Plaintiff has not presented evidence that he was denied access to grievance procedures or was otherwise prevented from exhausting his administrative remedies by NCCC officials. (Def. Reply Mem. 1.) Further, Defendant argues that Plaintiff should be barred from suit since Plaintiff conceded that he knew a grievance procedure existed at NCCC, but failed to avail himself of such procedure. (Id. 3-4.)

The Court concludes that Plaintiff failed to exhaust his administrative remedies under the PLRA since he did not file a formal grievance. Additionally, Plaintiff has not shown that he should be excused from exhaustion. Applying the three-prong Hemphill standard, the Court finds that administrative remedies were available to Plaintiff. While Plaintiff claims that NCCC inmates have limited access grievance procedures (see Pl. Decl. in Opp'n to Mot. for Dismiss. 2), he does not allege that NCCC prison officials impeded or prevented him from filing a grievance.

---

[4] On April 13, 2009, Plaintiff notified the Court that he is currently incarcerated at U.S.P. McCreary in Pine Knot, Kentucky.

10

Instead, Plaintiff argues that the grievance process at NCCC "was not available" because federal officials transferred Plaintiff from NCCC to federal prison ten days after his sentencing. (Id.)

This argument, however, is unavailing. An inmate's transfer to another correctional facility does not excuse his or her failure to exhaust administrative remedies if the inmate had sufficient time to file a grievance before being transferred. See Miller v. Bailey, No. 05-CV-5493, 2008 WL 1787692, at *6 (E.D.N.Y. Apr. 17, 2008); Hargrove v. Riley, No. 04-CV-4587, 2007 WL 389003, at *9 (E.D.N.Y. Jan. 31, 2007); Santiago v. Meinsen, 89 F. Supp. 2d 435, 440-41 (S.D.N.Y. 2000) (determining that plaintiff should not be "rewarded" for failing to participate in grievance procedure before being transferred). Here, Plaintiff states that he had ten days between his sentencing and his transfer to a federal facility in which to file a grievance at NCCC concerning the alleged wire tapping. (Pl. Decl. in Opp'n to Mot. for Dismiss. 2.) The Court finds this was a sufficient time for Plaintiff to file a grievance. Accordingly, the Court concludes that administrative remedies were available to Plaintiff and his failure to exhaust should not be excused under the first prong of the Hemphill test.

Further, Plaintiff's contention that Defendant "waived" its affirmative defense of non-exhaustion is without merit. The Court finds that Defendant did properly raise the non-exhaustion defense in its Motion to Dismiss. (See Def.'s Mot. to Dismiss 1.)

The Court also agrees with Defendant that, contrary to Plaintiff's reliance on Ziemba and related cases, this case is not one where Defendant's actions inhibited Plaintiff's ability to exhaust his remedies. To that end, Plaintiff has not alleged that Defendant engaged in any conduct such that it "should be estopped from asserting this affirmative defense of non-exhaustion." Toomer, 2009 WL 1269946, at *8. Thus, the Court concludes that Defendant did not waive or forfeit its affirmative defense of non-exhaustion.

Finally, the Court finds there are no special circumstances to justify Plaintiff's failure to comply with the administrative requirements. Plaintiff does not claim that he was unaware of the grievance procedures at NCCC, or that the regulations regarding these procedures were unduly confusing. Likewise, Plaintiff does not allege that he believed filing a grievance was unnecessary, or that his attempts to exhaust administrative remedies satisfied NCCC regulations. Indeed, Plaintiff seemingly made no attempt to avail himself of his administrative remedies at NCCC. In sum, the Court concludes that Plaintiff failed to exhaust his administrative remedies and that this non-exhaustion cannot be excused under the Hemphill test.

Generally, a prisoner's failure to exhaust his administrative remedies requires dismissal of the action without prejudice. See Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1998); Davis v. Reilly, 324 F. Supp. 2d 361, 366 (E.D.N.Y. 2004).

12

There are situations, however, where dismissal with prejudice is the appropriate disposition. For example, some courts have found that if exhaustion would be futile because the prisoner has been transferred to another correctional facility, dismissal with prejudice is proper. See Davis, 324 F. Supp.2d at 366; see also Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2003).

As explained supra, the Court finds that Plaintiff failed to exhaust his administrative remedies. Additionally, because Plaintiff is no longer incarcerated at NCCC, it would seem that administrative remedies for the violations of which Plaintiff complains are no longer available to him. Based on the record before the Court, however, which does not address Plaintiff's ability to seek administrative remedies at U.S.P. McCreary, this Court is not in a position to conclude that any attempt to file an administrative proceeding is futile. Accordingly, Plaintiff's claims against Nassau County are barred by the PLRA's exhaustion requirement and must be DISMISSED without prejudice.

IV. <u>Sua Sponte Dismissal of the U.S. Attorney's Office</u>

The Court <u>sua sponte</u> dismisses Plaintiff's actions against the U.S. Attorney's Office because it is clear that a plaintiff cannot maintain a "Bivens action against the United States Attorney's Office." <u>Ige v. United States Attys. Office</u>, No. 96-CV-2390, 1996 U.S. App. LEXIS 29136, at *4 (2d Cir. Nov. 8, 1996). Because the U.S. Attorney's Office is a federal agency, an

13

action against the U.S. Attorney's Office "is essentially a suit against the United States, [and] such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). Likewise, Plaintiff cannot sue the individually named federal Defendants in their official capacity.

To the extent Plaintiff asserts common-law tort claims against the individually named federal Defendants and the United States Attorney's Office, the Federal Tort Claims Act "provides that a suit against the United States is the exclusive remedy for a suit for damages for injury or loss of property 'resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" Rivera v. United States, 928 F.2d 592, 608 (2d Cir. 1991) (quoting 28 U.S.C. § 2679(b)(1)). Thus, Plaintiff may not assert common law tort claims against the individually named federal Defendents, but may proceed with these claims against the United States. Although it is unclear whether Plaintiff has presented his claim as required under the Federal Tort Claims Act, the United States Defendants have not moved to dismiss, and given Plaintiff's pro se status, the Court will not draw assumptions on this ground.

Thus, Plaintiff may continue only with his Bivens action against the individually named federal Defendants in their personal

14

capacity, and may continue with this common law tort claims against the United States.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's claims against NCCC are DISMISSED with prejudice; the Clerk of the Court is directed to terminate NCCC as a Defendant in this matter, and replace this Defendant with Defendant Nassau County. Plaintiff's claims against Nassau County are barred by the PLRA's exhaustion requirement and are DISMISSED without prejudice. Additionally, the Clerk of the Court is directed to terminate Defendant U.S. Attorney's Office, and replace this Defendant with Defendant United States. Finally, Plaintiff may not proceed with his torts actions against the individually named Federal Defendants, and may proceed with his Bivens actions against these Defendants only in their personal capacity.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  Central Islip, New York
        August  14 , 2009