UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
DEMETRIUS HILL,

                         Plaintiff,

          -against-                              MEMORANDUM AND ORDER
                                                 08-CV-1045 (JS)(ETB)
RICHARD P. DONOGHUE, SARAH M. COYNE,
and the UNITED STATES OF AMERICA,

                         Defendants.
-----------------------------------X
APPEARANCES:
For Plaintiff:     Demetrius Hill, pro se
                   #68133-053
                   CCE Northeast Ohio Correctional Center
                   2240 Hubbard Road
                   Youngstown, OH 44505

For Defendants:    Diane C. Leonardo-Beckmann, Esq.
                   Vincent Lipari, Esq.
                   United States Attorney's Office
                   610 Federal Plaza
                   Central Islip, NY 11722


SEYBERT, District Judge:

          Plaintiff pro se Demetrius Hill ("Plaintiff") sued

Defendants Richard Donoghue ("AUSA Donoghue"), Sarah Coyne

("AUSA Coyne"), the United States (collectively, the "Federal

Defendants") and others for violations arising out of an alleged

scheme to record Plaintiff's jailhouse telephone conversations.

The Federal Defendants are the only remaining defendants in this

action, and they now move for judgment on the pleadings.  For

the following reasons, this motion is GRANTED.

BACKGROUND

The facts and procedural history of this case are set forth in the Court's previous orders.  Below, the Court only recites the facts necessary to put the analysis that follows into context.  Briefly, Plaintiff alleges that AUSA Donoghue, an Assistant United States Attorney in the Eastern District of New York, directed officials at the Nassau County Correctional Center (the "NCCC") to intercept and record Plaintiff's jailhouse telephone calls.  Plaintiff claims that the recordings were made without a warrant.  (Compl. at 2.)

According to Plaintiff, AUSA Donoghue used the tapes to allege a sexual relationship between Plaintiff and Magdalena Sanchez, who was at the time a target of the Eastern District United States Attorney's Office.[1]  (See id. 3.)  Donoghue also used the tapes to influence Plaintiff's sentencing before the Honorable Denis Hurley, United States District Judge.  (Id.)  He also provided the tapes to AUSA Coyne, a fellow Assistant United States Attorney, who in turn used the tapes to indict Sanchez.

Plaintiff also alleges that "someone" from the United States Attorney's Office leaked to reporters that Plaintiff (1)

---

[1]  Plaintiff does not elaborate on his connection to Sanchez. According to the Federal Defendants, Sanchez was an employee at the Metropolitan Detention Center in Brooklyn, New York, at the time the tapes were made.  (Def. Br. 2 n.2.)

was involved in an affair with Sanchez; (2) cooperated with prosecutors to secure Sanchez's indictment; and (3) had his sentence reduced as a result of the cooperation. (Id. at 4-5.)

## DISCUSSION

Liberally construed, Plaintiff's Complaint appears to raise the following claims: (1) under both Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388; 91 S. Ct. 1999; 29 L. Ed. 2d 619 (1971), and Title III of the Ominbus Crime Control and Safe Streets Act of 1968, as amended (the "Wiretap Act" or "Title III"), 18 U.S.C. §§ 2510 et seq., that AUSA Donoghue violated Plaintiff's rights by directing NCCC officials to intercept and tape Plaintiff's phone calls without a warrant; (2) under Bivens, that AUSAs Coyne and Donoghue used the improperly-obtained tapes of Plaintiff's conversations with Sanchez to secure Sanchez's indictment; (3) under Bivens, that AUSA Donoghue used the improperly-obtained tapes to influence Plaintiff's sentencing before Judge Hurley; (4) under common law, that AUSA Donoghue defamed Plaintiff by stating that Plaintiff and Sanchez were having an affair; and (5) under common law, that the United States defamed Plaintiff by telling the media that (a) Plaintiff and Sanchez were having an affair; (b) Plaintiff was a cooperating witness against Sanchez; and (c) Plaintiff's sentence was reduced as a consequence of his

3

cooperation.   In his reply, Plaintiff also asserts a "stigma-plus" claim arising out of the same facts as his purported defamation claim against the United States.   The Federal Defendants are entitled to judgment on the pleadings with respect to all of these claims.

I. <u>Legal Standard</u>

In resolving a Federal Rule 12(c) motion for judgment on the pleadings, the Court uses the same standard that it applies to Rule 12(b)(6) motions for failure to state a claim. <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, __ F.3d __, 2011 WL 2135734, at *8 (2d Cir. June 1, 2011).   To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face."   <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007).   The complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555.   In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level."   <u>Id.</u>   Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   <u>Harris v.</u>

4

Mills, 572 F.3d 66, 72 (2d Cir. 2009).  On a motion to dismiss, a plaintiff gets the benefit of all reasonable inferences, see, e.g., Litwin v. Blackstone Group, L.P.,  634 F.3d 706, 711 n.5 (2d Cir. 2011), but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

II. Analysis

The Court first addresses whether AUSAs Donoghue and Coyne are entitled to absolute prosecutorial immunity, and then considers whether Plaintiff had an expectation of privacy that is required to prevail on Fourth Amendment or Title III claims. It then considers Plaintiff's libel and stigma-plus claims.

A. Absolute Prosecutorial Immunity

It is well established that prosecutors have absolute immunity from suits premised upon actions they took within the scope of their prosecutorial duties. See Cleavinger v. Saxner, 474 U.S. 193, 200, 106 S. Ct. 496, 500, 88 L. Ed. 2d 507 (1985) ("Full immunity also has been given to federal and state prosecutors."); Imbler v. Pachtman, 424 U.S. 409, 427, 96 S. Ct. 984, 993, 47 L. Ed. 2d 128 (1976) (prosecutorial activities that are intimately associated with the judicial process are protected by absolute immunity); see also Hartman v. Moore, 547

5

U.S. 250, 261-262, 126 S. Ct. 1695, 1704, 164 L. Ed. 2d 441 (2006) (noting that absolute prosecutorial immunity protects federal prosecutors facing <u>Bivens</u> actions).  This immunity is not limited to activity taking place in the courtroom; rather, it can extend to a prosecutor's conduct in obtaining, reviewing, and evaluating evidence.  <u>See</u> <u>Imbler</u>, 424 U.S. at 431 n.33.  As will be discussed further, AUSAs Donoghue and Coyne are absolutely immune from Plaintiff's claims arising out of their use of the tapes, but AUSA Donoghue is not immune from Plaintiff's Fourth Amendment and Title III claims that he wrongfully caused NCCC officials to make the tapes in the first place.

Plaintiff's claim that AUSAs Donoghue and Coyne wrongfully used the tapes to indict Sanchez is barred because this conduct is among a prosecutor's quasi-judicial duties that are shielded by absolute immunity.  <u>See</u> <u>Imbler</u>, 424 U.S. at 431 n.33 (explaining that a prosecutor's duties "include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present"); <u>Pinaud v. County of Suffolk</u>, 52 F.3d 1139, 1147 (2d Cir. 1995) (noting that prosecutors are immune from actions taken to initiate a

6

prosecution) (citing Burns v. Reed, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939, 114 L. Ed. 2d 547 (1991)).

Similarly, Plaintiff's claim that AUSA Donoghue wrongfully used the tapes to influence Plaintiff's sentence is barred by absolute immunity. Pinaud, 52 F.3d at 1150 (noting that a prosecutor's "conduct in a sentencing proceeding would be protected by absolute prosecutorial immunity") (internal quotation marks omitted).

AUSA Donoghue is not absolutely immune from Plaintiff's Fourth Amendment or Title III claims that he directed NCCC officials to make the warrantless recordings of Plaintiff's calls. In so deciding, the Court agrees with Plaintiff that AUSA Donoghue's alleged conduct as it pertains to these claims was investigative rather than prosecutorial. While absolute immunity protects prosecutors functioning as officers of the court, it does not shield them from the consequences of their actions taken in an investigative or administrative capacity. Van de Kamp v. Goldstein, 555 U.S. 335, 129 S. Ct. 855, 860-61 (2009). For example, conduct falling outside the protection of absolute immunity includes a prosecutor's giving advice to police during a criminal investigation, see Burns, 500 U.S. at 496; providing information to the media, and acting as a complaining witness in support of a warrant application, see Van

7

de Kamp, 129 S. Ct. at 861 (collecting cases).

The gravamen of Plaintiff's case is that AUSA Donoghue wrongfully ordered recordings of Plaintiff's phone calls in conjunction with his bid to influence Plaintiff's sentence and, with AUSA Coyne, to indict Plaintiff's supposed paramour. Were the Court to frame Plaintiff's Complaint this way, it might conclude that AUSA's alleged conduct was simply part of the "obtaining, reviewing, and evaluating of evidence" that goes hand-in-hand with preparing cases for court. See Imbler, 424 U.S. at 431 n.33. But the Court is constrained to construe Plaintiff's pro se Complaint to raise the strongest arguments it suggests, and so it must view AUSA Donoghue's ordering the recordings apart from his conduct at Plaintiff's sentencing or his pursing an indictment of Sanchez.

The issue, then, is whether the nature of AUSA Donoghue's directing NCCC officials to make warrantless recordings of Plaintiff's calls was prosecutorial or investigative. The U.S. Supreme Court's decision in Mitchell v. Forsyth compels the conclusion that AUSA Donoghue's alleged conduct was investigative and hence unprotected by prosecutorial immunity. 472 U.S. 511, 520, 105 S. Ct. 2806, 2812 (1985). In Mitchell, the Supreme Court held that the U.S. Attorney General did not enjoy absolute prosecutorial immunity from suits arising

8

from unauthorized wiretaps in the name of national security. Id. Although that case considered the Attorney General's conduct in the context of his national security rather than law enforcement responsibilities, the Supreme Court cited it in a later decision in which it rejected the notion that a prosecutor's handling of any type of investigatory activity "could be said to be in some way related to the ultimate decision whether to prosecute" and thus shielded by absolute immunity. Burns, 500 U.S. at 495. This language forecloses an argument that because any time a prosecutor develops evidence he is doing it with an eye toward using that evidence at an eventual trial, his evidence-gathering is necessarily protected by absolute immunity. Mitchell implicitly rejected the argument that prosecutorial immunity is so expansive. Burns, 500 U.S. at 495 (explaining that, in Mitchell, the Supreme Court rejected the Attorney General's absolute immunity defense because he was not acting in a prosecutorial capacity, even though "the wiretap was arguably related to a potential prosecution"); see also Liffiton v. Keuker, 850 F.2d 73, 76 (2d Cir. 1988) (state assistant attorney general not entitled to absolute immunity from liability arising from conduct that included illegal wiretaps).

B. Plaintiff Impliedly Consented to the Recordings

Because it concluded that AUSA Donoghue is not absolutely immune from liability arising out of the warrantless recordings, the Court next considers whether there is a Fourth Amendment or Title III violation when Plaintiff admits that his jailhouse calls were each preceded by an audio disclaimer warning him that his conversations may be monitored and recorded. (Pl. Opp. 7.) There is not.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. CONST. AMEND. IV, and applies both to seizures of tangible items and recordings of oral statements, see Katz v. United States, 389 U.S. 347, 353, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). To establish that the wiretaps violated Plaintiff's Fourth Amendment rights, he must demonstrate both that (1) he had an actual, subjective expectation that his conversation would remain private; and (2) his expectation was reasonable. Smith v. Maryland, 442 U.S. 735, 740, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979). Here, Plaintiff cannot satisfy either element. He admits that the NCCC telephones played a recorded warning that calls may be recorded and monitored, which belies an actual expectation of privacy. (Pl. Opp. 7.) And even if he did expect his

conversation to be private--for example, if he ignored or disbelieved the warning--that expectation was not reasonable. United States v. Friedman, 300 F.3d 111, 123 (2d Cir. 2002) (holding that "where a facility provides some notice to inmates that calls may be monitored, facility's practice of automatically taping and randomly monitoring" inmates' calls does not violate the Fourth Amendment) (internal quotation marks omitted).

To the extent Plaintiff also asserts a claim under the Wiretap Act, this claim fails for the same reason. With certain exceptions, the Wiretap Act prohibits the intentional interception of wire, oral, and electronic communications unless specifically authorized by a court order. See 18 U.S.C. §§ 2510 et seq.; Modelle v. Fauro, No. 08-CV-1042, 2010 WL 624023 at *6 (N.D.N.Y. 2010) (adopting Report & Recommendation) (citing Lonegan v. Hasty, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y 2006)). A chief exception is when the subject of the communication has consented, either directly or impliedly, to interception. 18 U.S.C. § 2511(2)(c). Where a prison gives notice to inmates that their calls may be monitored, inmates' use of the prison's telephones constitutes implied consent for the purposes of Title III. See United States v. Willoughby, 860 F.2d 15, 19-20 (2d Cir. 1988) ("In the prison setting, when the institution has

11

advised inmates that their telephone calls will be monitored and has prominently posted a notice that their use of institutional telephones constitutes consent to this monitoring, the inmates' use of those telephones constitutes implied consent to the monitoring within the meaning of Title III.") (internal quotation marks omitted).

Plaintiff argues that although he had notice that his calls could be monitored and recorded, he was not warned that they could be provided to federal prosecutors. (See Pl. Opp. at 7.) The Court agrees with the Federal Defendants that this distinction is irrelevant. Willoughby, 860 F.2d at 23 ("Mistaking the degree of intrusion of which probable eavesdroppers are capable is not at all the same thing as believing there are no eavesdroppers.") (quoting United States v. Harrelson, 754 F.2d 1153, 1170 (5th Cir. 1985)).

Accordingly, Plaintiff's Fourth Amendment and Title III claims against AUSA Donoghue are dismissed.[2]

C. Libel

The Court already dismissed the defamation claim against AUSA Donoghue (See Docket Entry 57, at 14), thus Plaintiff's only remaining defamation claim is against the

---

[2] To the extent that he claims that his legal phone calls were recorded, Plaintiff's Complaint lacks any factual allegations that would make this claim plausible.

United States for allegedly leaking to the media the nature of Plaintiff's affair with Sanchez and details about his cooperation with authorities. (See Compl. at 4-5.) Plaintiff's claim is barred by the Federal Tort Claims Act (the "FTCA"). The FTCA is a limited waiver of the United States' sovereign immunity that permits federal district courts to hear certain claims against the United States arising out of negligent or wrongful acts of "any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b). Libel claims, however, are explicitly excepted from the claims for which the FTCA waives sovereign immunity. 28 U.S.C. § 2680(h); B & A Marine Co., Inc. v. Am. Foreign Shipping Co., Inc., 23 F.3d 709, 714 (2d Cir. 1994). Accordingly, Plaintiff's libel claim against the United State must be dismissed.

>D. Any Stigma-Plus Claim Fails

For the first time in his opposition to the Federal Defendants' motion to dismiss, Plaintiff re-casts his defamation claim as a stigma-plus claim. Even assuming his Complaint could be construed to raise such a claim, Plaintiff's stigma-plus theory is without merit. To succeed on a stigma-plus claim, a plaintiff must show "an injury to reputation, coupled with the deprivation of a tangible interest or property right, without

adequate process." DiBlasio v. Novello, 413 Fed. Appx. 352, 355
(2d Cir. 2011). Here, Plaintiff's case seems to be that federal
officials falsely told reporters that Plaintiff was having an
affair with Sanchez and cooperating with prosecutors and that
this information, particularly the accusation that Plaintiff was
"ratting," jeopardized Plaintiff's safety. (See Pl. Opp. 11.)
Among other problems with this theory,[3] Plaintiff has not
sufficiently alleged a deprivation of a tangible interest or
property right. Specifically, he has not alleged that he has
actually been harmed by the alleged misinformation. As it did
in denying Plaintiff's request for an injunction, the Court
continues to find that the prospect that Plaintiff might be
harmed by fellow inmates is "abstract" and "speculative." (See
June 10, 2008 Memorandum & Order, Docket Entry 7 at 6.) If the
only damage is to his reputation, Plaintiff cannot maintain a
defamation suit against the federal government. Hall v.
Marshall, 479 F. Supp. 2d 304, 314 (E.D.N.Y. 2007).

---

[3] The Court very much doubts whether the alleged danger-inducing
statements, i.e., that Plaintiff was a cooperating witness,
damaged Plaintiff's reputation. See Michtavi v. N.Y. Daily
News, 587 F.3d 551, 552 (2d Cir. 2009) (under New York law,
concluding as a matter of law that statement asserting that
plaintiff was planning on cooperating with prosecutors was not
defamatory).

14

CONCLUSION

For the foregoing reasons, the Federal Defendants' motion to dismiss is GRANTED. The Clerk of the Court is directed to mark this case CLOSED. Plaintiff's request that the Court issue a final, appealable order concerning its decision to dismiss his claims against the Nassau Defendants (Docket Entry 82), is granted inasmuch as this case is now closed.


SO ORDERED.


/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:      September 2, 2011
            Central Islip, New York

15